Our second case on the call of the docket today is agenda number 12. Case number 11 got moved to January, so we're on to number 12. Case number 114-121, People v. Dominic Eppinger. Counsel for the appellant, please proceed. Good morning, Your Honors. Counsel. May it please the Court, Erica Seaburn from the Illinois Attorney General's Office here on behalf of the people of the State of Illinois. This Court should reverse the judgment of the appellate court and hold that the trial court did not commit any plain error in holding Vordier in defendant's absence after he refused to enter the courtroom and had previously exercised a valid waiver of his right to counsel. Now, at the outset, the parties agree that the plain error standard applies, and they also agree that defendant can only succeed if he shows that his substantial rights were affected by the alleged error. But defendant's real problem is that he hasn't met the threshold requirement of showing that a plain error occurred, even without the substantial rights prong. Now, if there were ever a case where the alleged error wasn't plain, this would be it. A plain error has to be clear or obvious. This is implied in the plain error standard. The error has to be so obvious that it doesn't require a contemporaneous objection from one of the parties in order to bring it to the trial court's attention. It should be so obvious that the trial court can notice it on its own and correct it before it reaches the appellate level. But here there was no clear or obvious error because the on-point precedent supported the trial court's actions, the on-point precedent here being the appellate court case of People v. Reisinger, which holds that the trial in absentia statute does not apply to defendants who are in custody, but simply refuse to come into the courtroom and participate in the trial. Now, here the trial court's actions were in accordance with Reisinger. So the trial court can't have committed a clear or obvious error by simply acting in accordance with the relevant precedent. Now, because of this deficiency in the defendant's case, this court could dispose of the entire matter simply by holding that the alleged error here wasn't clear or obvious, without even getting into the statutory interpretation or addressing the second prong of plain error as to whether the defendant's substantial rights were affected. I'd like to move on to the substantial rights prong. The defendant's problem here is that the only substantial right that could possibly be implicated by his absence during voir dire is the possibility that the jury was not impartial. And here he's made no allegations that any of the jurors was biased whatsoever. We know from People v. Bean and from this court's later precedent in People v. McLaurin that the broad right to be present during trial is not in itself a substantial right. In order to meet that plain error standard, you have to show more than that you weren't present. You have to show that a substantial right was implicated. And here the only possibility is that the jury was biased. But here there's no allegation. And there's nothing in the record to indicate that the jury was biased in any way. Finally, I'd like to briefly address the issue of the statutory language. Here the plain language of the statute indicates that it applies to defendants who have either forfeited their bail bonds or escaped from custody. And there's simply no indication that the legislature intended for this statute to apply to defendants who are in custody but just decided at the last minute that they don't want to participate at trial. If the court has no questions at this time. I perhaps have a question. You begin by saying that there is no plain and obvious error because there was precedent that controlled. I assume, however, to really analyze this, we'd better decide if that precedent was correct or not. So may I ask you some questions about Reisinger? Well, I don't mean to interrupt, but I would say that even if this court were to decide now that Reisinger was somehow incorrect, I still don't think that that would meet the clear or obvious standard because under plain error we're still looking at this from the trial court's perspective. And what the trial court has in front of it at the time that it's making this decision is Reisinger. So even if we now decide that Reisinger was incorrect, that still doesn't mean that the trial court committed a clear or obvious error by not anticipating that this court might later hold that Reisinger was incorrect. But in terms of your argument, then, you don't seem to be suggesting that Reisinger was correct. You seem almost to be conceding that Reisinger was wrong. You're not defending it in any way. I mean, the Reisinger court looked at the same fact situation as what occurred here and found that when the defendant who had been advised as to his rights of counsel and his rights to proceed pro se refused to enter into the courtroom, that he had deliberately and knowingly waived his right to counsel. Is that still a correct statement of the law or not? Well, initially I would say that I do think that Reisinger was correctly decided. And it is factually on point here in that both Mr. Reisinger and defendant made valid waivers of their right to counsel. And there's no argument here that Mr. Eppinger's waiver of his right to counsel was incorrect, nor is there any argument that he didn't make a valid waiver of his right to be present. His statement to the court that he did not intend to participate in trial was very clear, also slightly profane, so I'm not going to quote it. But he made a valid waiver. And under those circumstances and under the circumstances of Reisinger, it was the correct interpretation of the statute that because he was in custody, trial could proceed without him and there was no need to appoint counsel because he had previously made a valid waiver. So I don't think that Reisinger was incorrectly decided. If this court were to decide now that Reisinger was incorrect, that would still not indicate that the trial court here made a clear or obvious error by following Reisinger. I'm surprised that invited error has not been raised here. This is a defendant's behavior causes problem, and I don't know how that should not factor into the analysis. Well, I didn't argue this in terms of invited error. That's correct. I think that his behavior definitely supports the argument that he made valid waivers of both of his constitutional rights here, both his right to counsel and his right to be present. So I think his behavior is definitely supportive of our position that a defendant who chooses to waive his right to counsel, fire two public defenders, say that he's ready for trial, and then wait until the last minute and say, no, now I'm not going to come out of the courtroom, that behavior is not something that the legislature could have intended to support by passing the trial in absentia statute. Ms. Seaborn? Yes. You rely on People v. Owens. In Owens, the defendant was represented by counsel. It was counsel who both informed the court of the defendant's desire to remain in his cell and asked the court on the defendant's behalf, excuse me, to excuse defendant's presence from that portion of the proceedings. And what impact does it have that we have quite a different situation here where I believe the facts were that this was, it happened very quickly, it was based solely on the Bayless report, the defendant was unwilling to participate. How does that impact the plain error analysis, if at all? It was, in fact, a couple of different statements. I believe what happened, we're talking about the court proceeding of January 11, 2010, which starts, I believe, page 200 of the record. Defendant had been informed at least two weeks in advance that they were going to start voir dire that morning. He had answered ready for trial. As soon as six days before that date, they had had the last pretrial hearing. He had not indicated that he was not ready. That morning, he says, I want counsel. The trial court held. I'm finding that this is a delay tactic. You've been saying for weeks that you're ready for trial. You fired all your counsel. We're going forward with this. He, the defendant said that he was, you know, not going to come out and that he was not going to participate. And the court held the start of voir dire for several hours until the afternoon session, allowed the defendant an opportunity to talk to his mother while he was in the holding cell. Defendant refused. They reconvened later that afternoon, and defendant still refused to come out of his cell. So in this case, the record supports the trial court's conclusion that defendant had been told in advance that this was going to happen. He had plenty of time to prepare. He was simply trying to delay the proceedings. The trial court then gave him more time to rethink his position after being warned the trial was going to go forward without him. And he still refused to come out of his cell. And at that point, the trial court said, all right, we are, in fact, going to go forward with voir dire. And voir dire took place with him. Voir dire did, in fact, take place without him. Is it still constitutionally permissible, though, for defendants' entire trial to be conducted in absentia with no representation? If the entire trial had taken place without him, then we'd be having a different argument under the substantial rights prong. Now, we would still be arguing that the statute did not apply to him because he was still in custody and that the error wasn't clear or obvious. If he were absent for the entire trial, then he might have a different argument under the substantial rights prong because then perhaps he could argue that one of his other substantial rights had been implicated in addition to the absence from voir dire. However, since that's not the factual situation presented here, the court need not address whether that possibility could affect another defendant's substantial rights. Ms. Seaborn, on the day of when all this transpired, when the voir dire took place, you've made references to what transpired, you know, reports from bailiffs, the mother's conversations and so forth. How much of all that is on the record? Well, for starters, the defendant refused to talk to his mother. Well, my question is what's on the record? What is in the record is when the defendant initially appeared, he had the conversation with the trial court and said On the day of voir dire, what's on the record? The day of voir dire is January 11th. During the morning session when the defendant came out, he said he was not going to participate. That is on the record. So he did come out? Yes, he did come out initially. And that's when he made these statements that include expletives and so forth. I believe the expletive came in the later statement to the bailiff. Okay, but that's not on the record. It's on the record to the extent that the trial court asked the bailiff to The court reporter transcribed what the bailiff said and they put down the bailiff's name and the bailiff reported what the defendant said. So that is, in fact, in the record. But the defendant's initial statements to the trial court that he wanted counsel and the trial court's finding that this was a delay tactic, that is in the record starting at page 200. Well, here's what I want to make sure I'm clear on to follow up even on Justice Freeman's question about invited error that's been characterized that this defendant who had selected to represent himself voluntarily absented himself from the proceedings. I just want to know how clear it is on the record that he voluntarily made that decision. I think it's very clear. And certainly defendants made no argument in this court, or I believe in the appellate court, that his desire not to participate in voir dire was somehow involuntary or that the bailiffs were holding him hostage or anything related to that. It's very clear both from this instance and from defendant's behavior both in pre-trial and in post-trial this is not a man who has a problem asserting his rights when he wants to. He seems like a fairly opinionated individual and when he wants to tell the trial court something he makes sure that he puts it on the record himself. But counsel, didn't he say at some point that he would not participate, as he told the court, because I'm not going to trial by myself? Yeah, I believe that was one of his final statements at around page 202. Yes, it was at that point that he attempted at the last minute to retract his previous valid waiver of his right to counsel. But some people change their minds, you know. That's true. It does occasionally happen that a defendant who has previously executed a valid waiver changes his mind at the last minute. However, it's also clear from both this court's precedent and United States Supreme Court precedent that the trial court does not have to allow a defendant to retract a waiver, particularly in a situation like this case where a defendant waits until the last minute and then tries to hold the court hostage by refusing to come out into the courtroom. What happened afterwards? Eventually he came out and eventually he participated in the trial, correct? Yes. Was there any colloquy about what had happened on this specific day? The next, they held word here that afternoon. Then they recessed. The next morning defendant came out. He stated that, you know, he would still prefer to go forward with counsel. The trial court denied it. And defendant said, all right, then I'm ready to proceed. And they began trial. And then trial proceeded. Defendant gave his opening statements. He cross-examined all the state witnesses. He gave closing statements. And during the post-trial proceedings, he wanted to argue his own post-trial motion. There's no indication that he was, that his waiver of the right to counsel was somehow invalid or that the trial court's colloquy was somehow inadequate. If the court has no further questions at this time. Thank you, Ms. Seaborn. Thank you. Counsel for the appellee. May it please the court, counsel, my name is Fletcher Hamill and I represent the defendant appellee, Dominic Eppinger. Your Honor, it's the first question in plain error analysis is whether or not error occurred. So we'll start there. And on that question, I think this is a very straightforward case. Section 115.4.1A of the Code of Criminal Procedure authorizes a judge to conduct trial in absentia when a defendant willfully absents himself from trial. However, this section also demands that the trial court appoint counsel to represent the defendant, even if he has previously waived that right. And the judge in this case properly proceeded to voir dire in absentia because the defendant did willfully fail to appear. However, he did not appoint counsel and that violated Section 115.4.1A, constitute plain error because it constitutes structural error that affected the defendant's substantial rights. Is it a problem with the defendant's right to counsel if the trial court forces him to have an attorney when he says, I don't want one? It actually is not. And if you look, I refer you to Freda v. California, the case in which the United States Supreme Court first recognized a federal right to self-representation. The court actually addressed that very question because the state in that case, the state of California, had argued to the court that you couldn't practically have a right to self-representation because a pro se defendant might do something that would require him being removed from the courtroom and then you'd be left with nobody from the defense. And what the court said in response to that argument was that wasn't really a problem because what the judge could always do was appoint standby counsel over the defendant's objection even and against his will and could remove the, if the situation came up where the defendant had to be removed from the courtroom, he could be removed and standby counsel could take over the case. So it's actually, this is actually the, what section 115.4.1A requires is actually the United States Supreme Court's preferred method of dealing with this kind of situation. So it does not, it does not implicate the defendant's right to self-representation. And what about the state's argument that the absentia provisions he's, were intended to cover those that were on bond forfeiture who had escaped? Right. Well, I believe the state's argument is contrary to the plain language of the section. The scope of the section is defined in its first sentence. And the first sentence provides that a defendant can be tried in absentia when he absents himself from trial and when it's shown that his absence is willful. It doesn't make any distinction between defendants who absent themselves from trial because they refuse to leave their holding cell versus a defendant on bond who absences himself from trial by staying home or staying out, you know, fleeing the country or whatever it might be. There's no distinction in that sentence that defines the scope of the section. And what the state latches on to is language from what's actually the ninth sentence in the provision, which talks about the trial rights that a defendant is afforded during a trial in absentia. And in that section, it says, he shall be afforded the same rights that he would have received had he not escaped from custody or forfeited his bond. And the problem with the state's argument is the ninth sentence is not defining the scope of the section. The scope of the section was defined by the first sentence, which does not include that limitation. And the existence of that language in the ninth sentence really only shows that if the legislator wanted to limit its scope, it could have. Counsel, may I say, we've been very careful about requiring precise admonitions to defendants before a trial in absentia can take place. And the statute itself explains specifically what the court has to tell the defendant before the state can move forward in an inception. I'm assuming that's the word, but in any case. And specifically, this is what the court is told to tell the defendant, that if he escapes from custody or is released on bond and fails to appear in court when required by the court, that his failure to appear would constitute a waiver of his right to confront the witnesses against him and the trial would proceed in his absence. That's specific. You can't have a trial without him unless he's been advised this. And what he's advised of is that this section only applies if he escapes from custody or is released on bond. Well, right. And that is a separate statute that creates these admonitions. What is, but again, that language is not in the first sentence of section 115.4.1A. And what probably happened is the legislator, in fact, probably did consider escaping from custody or forfeiting their bond to be synonymous with failing to appear, because those are 99.999% of the cases, that's how you do it. So why shouldn't we interpret that this is what the legislature meant in 115-4.1A as well? We're looking for legislative intent. When the legislature passed the statute, what did they intend? What was their meaning here? Don't we have to look at the other statute where they tell us pretty specifically what they meant? I don't think that you can look at the other statute and say that's what they mean for the scope of this section. I think that you have to look at the fact that you used different language, and they intentionally did so. And I think it's important to see that even though the legislature may have believed that escaping from custody or forfeiting a bond are probably the two most likely or almost cover all instances in which a defendant fails to appear, they had enough foresight to, when defining the scope of section 4.1A, they had enough foresight to include broader language. And that would encompass every time a defendant willfully absent himself in trial, even if it wasn't in a manner in which the legislator anticipated. And to go further on that, if you look at the purpose of section 4.1A, it's in contrary to what the state argues in its brief, it's not to ensure that a defendant waived his right, properly waived his right to be present. The purpose of section 4.1A is to govern trials in absentia. It's to ensure that when a trial in absentia occurs, because the defendant has validly waived his right to be present, it is to ensure that all of the defendant's other rights are not waived along with the right to be present. And that's clear from the language. You have the sentence providing for a jury trial. You have the sentence providing for the defendant to receive all of his trial rights. And then you also have the sentence, an issue in this case, requiring him to the right to counsel. So that purpose is not furthered by carving out some exception to the section, you know, the scope of the section for defendants who are in custody. Because as a practical matter, there's no difference. A defendant who refuses to come out of his holding cell fails to appear at trial because he's not in the courtroom. He's not there. He doesn't appear. Just like a defendant who fails to show up because he was on bond and stayed home. And just like a defendant who escaped from custody. And another way to look at this, and the state brings up the possibility of abuse by defendants or absurd results, but the absurd result here would be is that the defendant in this case, if you recall the facts, the defendant in this case was there, you know, was present during the morning session, went back to his holding cell after that, and then refused to come out for the afternoon session. Under the state's interpretation of this statute, if he, instead of going back to the holding cell with the bailiff, if instead he had run out the front door of the courtroom and escaped from custody, under the state's interpretation of the statute, he would be entitled to counsel. But it's only because he went back to his holding cell that, according to the state, he's not. Because it has something to do with the statement and the ideas in Reisinger that, in fact, his refusal to come out was a knowing waiver of a right to counsel. Well, so would his escape out the front door. You're already dealing with a defendant who, you know, by definition, if you're talking about trial and abstention the first way, you're dealing with a defendant who has waived his right to be present. Every one of them has. Every defendant in a trial and abstention situation could be in that courtroom if he wanted to be. And so this defendant is no different from any other defendant in that regard. And so then there's no logical reason for the legislature to limit the application of this section to some, you know, out-of-custody defendants and not apply it to in-custody defendants. And, in fact, the plain language of the section does not. It does not limit its application to out-of-custody defendants. So the plain language of the section is clear. And the judge did violate it by failing to appoint counsel to represent the defendant. And then the question becomes, was that plain error? And it was. This is structural error. If anything could possibly be structural error, this is it. This goes directly to the root of the adversary process. It actually goes deeper than a defendant's trial rights or his constitutional rights. This is, before you even get to the Constitution, our system is an adversary system. And it depends on there being an advocate for one side, an advocate for the other side, and a neutral prior effect in the middle. And when you have a situation like this where the voir dire is conducted with nobody from the defense, that takes away one of the necessary components of the adversary system. You simply cannot have a fair proceeding with one of the proponents of a party missing. And this is exactly like People v. Vargas, which I discussed in my brief, where the judge absented himself from the bench very briefly during a jury trial. The record positively showed that nothing occurred during the judge's absence where his presence would have made a difference. The record clearly showed that the judge, you know, that had the judge been present during that time, the outcome of the trial would have been exactly the same. But nevertheless, this court found that that was plain error under the second prong of plain error rule because it was structural, because you simply cannot have in an adversary system at any time a proceeding with no judge. And this is the exact same kind of error where even if the record shows that, and actually in this case, the record does not affirmatively show that the jury was not biased. It just doesn't show that it was. And a big part of that is because you didn't have any input from the defense during the voir dire. But even if it doesn't show that the jury was biased, it's still the procedure itself doesn't work when you don't have a representative from one of the parties. And so that is as structural as you can get. Counsel, do you agree with opposing counsel that once a defendant waives right to counsel, that he can't change his mind as here because he told the judge, no, I don't really want to go to trial by myself, and that's why he stayed in the cell? I do agree that he could. He could change his mind. And I would say it is correct that when a defendant does make his request on the day of trial, that the judge has the discretion to deny it if he believes that it is an attack delay tactic. I would point out in this case that that was not the first request that this defendant made for counsel. He had actually requested standby counsel a month before. I believe it was December. I believe he wrote a letter to the judge on December 15th of the previous year, and there was a hearing held on his request on December 17th. So the defendant. He previously had asked for counsel. So this wasn't the first time that he had asked. In December, he asked for standby counsel. He told the judge he still wanted to conduct his own defense, but he was worried after having lost several pretrial motions, that he was worried that he was going to come across situations where he didn't know how to handle them. And so he asked the judge at that time for standby counsel, and the judge denied that request. And it's true that I believe that the judge acted within his discretion to deny his request. That's, you know, the law. But had the judge granted that request, we wouldn't be here today, because had the judge granted that request, there would have been standby counsel, and under FREDA, standby counsel could have taken over this case when the defendant absent himself from the courtroom. Has the record adequately set forth the history of the defendant in his counsel? In other words, whether he had counsel at one point and then discharged him? Does it show that? It does. Yeah, I believe every hiring and firing of counsel happened in open court and is transcribed. And there were several. There were what? There were a couple of hearings on this. The defendant was initially appointed one counsel. He didn't get along with that counsel. He asked for a new one to be appointed. The judge actually granted that request, appointed a new counsel. Then the defendant decided to go pro se. There was a waiver on the record of the right to counsel. He proceeded to litigate pretrial motions, and then at the end of the pretrial motions, they said on December 15th, I believe it was, after he lost all his pretrial motions, the defendant asked for standby counsel, saying, I don't know if I can handle this anymore. And that request could have easily been granted. But as you indicated, the court did not have a requirement to grant that. The last colloquy before he did come out on the day of jury selection, did he ask for standby counsel or for counsel to be appointed and give up his right to represent himself? The last request was for counsel to take over the case. So for actual, not standby counsel, but for actual counsel. So it was a different request from the one that he made in December. He went from in December saying, I want to conduct my defense, but I don't think I can handle it all the time, to in just January saying, I know I can't handle my defense, and I want counsel to do it for me. Was that on the day of voir dire? That was the day of voir dire. That was the morning before voir dire started that afternoon. I don't know if Justice Tice had more on that. And finally, the state actually led with this argument that the error in this case, even if it violates the section, even if it's structural error, it still can't be plain error because of the existence of people versus rising error. And my response to that is that argument ignores the plain language, ignores the fact that Section 115.4.1a exists. And the plain language of Section 4.1a clearly requires counsel to be appointed in every trial in absentia. So the judge had that. And then Florida versus California, the United States Supreme Court ruled that the way to handle a disruptive pro se defendant is to appoint standby counsel and have standby counsel take over his case when you remove him from the courtroom. That was plainly obvious to the judge. The fact that people rising there existed. A 1982 appellate court case in the Fifth District that, in my research, has been cited once since 1982, there's no indication that the judge was aware of rising error. There's really no indication that the judge considered any of this when he proceeded to voir dire. I don't believe that the existence of that case can create a situation where, one, a clear violation of the plain language of the statute, that, number two, is structural error, that that can be not plain error because a 30-year-old appellate court case exists. Counsel, before your time is almost up, if we should find that there was error, structural or plain, have you given any thoughts to invited error? Well, I don't think that this defendant invited this error. Remember that the defendant in this case, he never actually expressed a desire to have voir dire occur without any representative from the defense. He wanted counsel there. He wanted to be there with counsel. That's all he ever asked for. So I don't think that he invited. Obviously, his conduct is what ended up causing this problem. But that's always going to be the case in a trial in absentia situation because it's always going to be a case where a defendant could be there, chose not to be, and has done something wrong. So I don't think that you can say that the defendant in this case invited the judge to conduct voir dire without him. And I would also, on top of that, point out, again, this is structural error. It goes deeper than the defendant's rights. Even if the defendant has waived his right to counsel and has waived his right to be present, the adversary process still requires there to be somebody there. Has invited error ever been applied in a structural error situation? I'm sorry? Has invited error ever been applied in a structural error situation? You know, I don't believe it has. And going back to People v. Vargas, and there aren't a whole lot of cases out there where the court does find structural error. But going back to People v. Vargas, if I recall, everybody in that courtroom in Vargas was perfectly fine with what happened. I don't know that necessarily they invited it, but certainly nobody had a problem with what the judge did there in the courtroom. And this court still found structural error and reversed because it was so important to have the judge there. And that's the same situation here. It's just too important to have a representative from the defense that even if somebody waived it, even if somebody invited it, you still have to have that representative. Mr. Hamiltz, since your time is up, I just want you to see if you can answer this question. I'm not inviting you to argue a point. Did you say earlier in your reference to the judge denied the earlier request for standby counsel, did you then say that was within the judge's discretion? It was. Okay. I just wanted to make sure I heard that. Unless, Your Honor, you have any other questions, I would ask that you affirm the appellate court and remand the cause for a new trial. Thank you, Mr. Hamiltz. Any rebuttal? Thank you, Your Honor. I'd like to begin by briefly addressing the statutory language. Now, the defendant is correct that one thing is in the first sentence and one thing is in the ninth sentence. However, one of the basic principles of statutory interpretation is statutes have to be construed as a whole, and statutes that are in different sections of the code should be construed so that they are not in conflict with each other. So in the ninth sentence of Section 115.4.1a says that these constitutional rights apply to defendants who have either forfeited their bail bonds or escaped from custody, and when Section 113.4.e talks about the essential warning for defendants who have escaped from custody or have been released on bond, both of those things apply. Those statutes have to be construed in harmony with each other, and the ninth sentence and the first sentence both apply equally. So there is indication from the plain language of the statute that the legislative intent was this trial in absentia statute applies to defendants who have escaped or who have jumped bail. Do you agree with Mr. Hamill that under your interpretation, if this defendant runs out the door and escapes, he gets an attorney, and if he goes back to his cell, he doesn't? That is what the plain language of the statute seems to indicate. Is that somewhat of an absurd result? Can you give any rationale that can apply to that? With defendants in general, I suppose the legislature could have thought that there might be some difference in knowledge as to what the defendant knows is the consequence of him failing to appear. So a defendant who suddenly decides to escape from custody might not be thinking all that rationally about what's going to happen at his trial, whereas a defendant who is downstairs in the holding cell. We could even go a step further, right, and say it's a defendant who has already waived his right to counsel, which is our case, and he runs out the door, right, he gets counsel. This defendant doesn't get counsel when he stays in his cell. So there can already be a relinquishment of the right to counsel, which there was here, which was discretionary with the trial judge. So what happens in the situation of the guy running out the door, he gets counsel and the other guy doesn't, and I think in our situation there's like this overarching idea that here's a guy who wants an attorney at the last minute, he's not given an attorney, and now he goes to his cell and says I'm not coming out, so he gets an attorney under the defendant's interpretation. But under both the escapee and our situation, they get attorneys, but they're not present in the courtroom. And isn't that what this is really about, that Mr. Hamill would say you're not present, you get an attorney because of the adversarial process? I believe that is defendant's argument, but I don't think that's what the language of the statute indicates, and the plain language of the statute is the best indicator of legislative intent. The legislature chose to draw a line here. They chose to use the specific language, escape from custody, forfeit bail bond. What would have happened if he refused to come out, and as the defendant argues here, counsel was appointed? What would have happened that day? I think it is nearly inevitable that the defendant would probably be arguing before the appellate court that his right to represent himself had been denied at some point. And what about what would have happened in the courtroom that day? The trial would have been continued, right? And a lawyer would have said, I can't try this case, right? Yes. And that's one of the problems that's inherent with defendant's proposed solution of just, well, just appoint standby counsel. That doesn't solve the problem. All that means is that now you have to go find an attorney who's willing to serve as standby counsel, which is not an easy role to fill. The Supreme Court talks about this in McCaskill as though appointing standby counsel is something simple, but we know from this Court's precedent that the appointment of standby counsel is within the trial court's broad discretion, in part because it's a very difficult role to fill. You have to find an attorney who's willing to do this. You have to determine what that attorney's role is going to be. Is that person just going to sit there and make sure that the defendant phrases his questions in a proper way so as to avoid objection? Is he going to handle cross-examination? What if the defendant decides halfway through that he wants the attorney to handle it? And, again, it would require a great deal of time for the attorney to prepare for this case. The defendant had already fired two public defenders. There's no one standing in the background who's been following this through the months of pretrial who can just jump in at the last minute. If the defendant had successfully managed to convince the trial court that it needed to appoint counsel right then, he's effectively held the trial hostage while they go out and find an attorney and have that attorney prepare for this very difficult role. And perhaps I should have asked your opponent this. Do you think, I think he's saying not a standby counsel, that the trial court under this rule would have, under his interpretation of the statute, would have to be appointed counsel and not standby counsel? I believe the defendant made, he argued both because there was the initial request two weeks before where the defendant just said I want standby counsel. And counsel correctly conceded that the trial court had discretion not to appoint standby counsel, again, because that is a very difficult role. So not having, if there had been standby counsel, then that person might have been better prepared to jump in at the last minute. But the trial court was not required to appoint that person. As to the final request, defendant didn't ask for standby counsel. He wanted someone to represent him in total. And that's a different question of whether the trial court erred in refusing to allow defendant to retract that waiver at the last minute. And the trial court didn't err in doing that. He correctly found that this was a delay tactic by defendant. In terms of the invited error question, I would just say that I think the invited error issue is sort of subsumed in this case into the concept of waiver, because the defendant executed waivers of his right to counsel and waivers of his right to be present. There aren't a great deal of invited error cases, but I think it's implicit in that standard that if he can waive these, if these are rights that can be waived, the error could be invited, so it could be looked at in that standard. But counsel, in circumstances of defendant not jumping bail or leaving the courtroom, it's always going to be defendant's choice. So every case is invited error, you're saying? We didn't argue this as invited error. I mean, in terms of Justice Freeman's previous question, I suppose it could be looked at in that way. We're arguing this under the plain error standard. So not so much that we're saying the defendant invited the error, we're saying that the facts support the idea that both of his waivers were in fact valid, and that supports our interpretation that no plain error occurred here. In terms of Reisinger, finally, it doesn't matter necessarily that Reisinger is from 1982. What matters is that there's no contrary precedent from the Illinois courts that would tell the trial court to do anything differently. The trial court can't err by doing something in accord with the appellate court precedent. Trial courts are presumed to know and follow the law. So to hold that plain error occurred in this case would essentially be telling trial courts that if they think an appellate court case was wrongly decided, they should just ignore it sua sponte in the hope that this court will eventually agree with them. And that seems quite contrary to the plain error standard. There's no clear or obvious error here. If the court has no further questions, we would ask this court to reverse the judgment of the appellate court. Thank you. Thank you. Case number 114121, People v. Dominick. Eppinger is taken under advisement as agenda number 12. Ms. Seaborn, Mr. Hamill, we thank you for your arguments today. You're excused.